# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

ELLIOTT J. SCHUCHARDT,

        Plaintiff,

v.

BLOOMBERG, L.P. and ROY STROM,

        Defendants.

Case No. _____

**03 - 22  1017**

JURY TRIAL DEMANDED

## COMPLAINT

v    The Plaintiff, Elliott J. Schuchardt, files this complaint against Bloomberg, L.P. and Roy Strom. In support hereof, the Plaintiff states as follows:

### Parties & Jurisdiction

1.    Plaintiff, Elliott J. Schuchardt, is an adult individual residing at 8033 Ellisville Lane, Knoxville, TN 37909.

2.    Defendant, Bloomberg, L.P., is a Delaware limited partnership having a principal place of business at 731 Lexington Avenue, New York, NY 10022.

3.    Defendant, Roy Strom, is a journalist working in the Bloomberg Law division of Defendant Bloomberg, L.P. Strom maintains a business address at Bloomberg, L.P., 731 Lexington Avenue, New York, NY 10022.

4.    The Plaintiff is asserting jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a)(1) because this case is between citizens of different states and because the amount at issue exceeds $75,000.

5.    The Plaintiff is asserting venue in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## Background

6.      The Plaintiff, Elliott Schuchardt, is a 1993 graduate of Columbia Law School. He has been practicing law for twenty-nine years.

7.      Over the past thirty years, Schuchardt has worked with hundreds of clients in the areas of civil litigation, bankruptcy law, family law, criminal law, and corporate law.

8.      Over the past ten years, Schuchardt has established a reputation as a civil liberties attorney. In 2016, Schuchardt obtained an injunction which prevented Sweet Briar College, located in Amherst, Virginia, from closing. The college remains open today.

9.      Schuchardt has also sued the federal government, alleging unlawful collection of - mail. In that case, the U.S. Court of Appeals for the Third Circuit granted Schuchardt interim standing to investigate the allegations made by U.S. dissident Edward Snowden.

10.     This case relates to certain defamatory statements made by Defendants in two news articles published in August 2022. The background of the case is as follows.

11.     Between October 1, 2017 and October 16, 2021, Schuchardt represented David Dell'Aquila in a probate case involving the assets of Dell'Aquila's deceased father.[1]

12.     Schuchardt performed most of his work for Dell'Aquila on credit, with the understanding that he would be paid from the assets of the estate.

13.     While the probate case was pending, Dell'Aquila asked Schuchardt to represent him in a case against the National Rifle Association (the "NRA").

14.     That case is filed in this Court under the caption, *Dell'Aquila v. LaPierre*, Case No. 3:19-cv-00679 (the "NRA case").

---

[1] The case is filed in the Probate Court for Davidson County, Tennessee under the caption, *In re Louis Dell'Aquila*, Case No. 17-P-1725.

15.     Schuchardt successfully represented Dell'Aquila in connection with the NRA's motion to dismiss the NRA case.

16.     Schuchardt was not able to continue with the representation in the NRA case due to attacks on his license to practice law.  The attacks on Schuchardt's license were used to prevent Schuchardt from representing his former law firm, Upright Law,[2] in litigation in the Bankruptcy Court for the Eastern District of Tennessee.  The purpose of such litigation was to keep Upright Law out of the Tennessee market.  Schuchardt was denied a hearing in connection with the attacks on his license, and was summarily suspended from practicing before the Eastern District of Tennessee for two years.[3]

17.     The Upright Law litigation affected Schuchardt's ability to represent Dell'Aquila in the NRA case, in this Court.

18.     On August 28, 2021, Schuchardt reported the two-year suspension to this Court. This letter was filed under seal and was confidential.

19.     On September 3, 2021, this Court entered an order reciprocally suspending Schuchardt for two years, or until the Eastern District of Tennessee readmitted Schuchardt.  The Court's order was also filed under seal and was strictly confidential.

---

[2] Upright Law is the nation's first national consumer bankruptcy law firm.  It has offices in nearly all fifty states.

[3] In the Upright Law litigation, the chapter 13 trustee in the Bankruptcy Court for the Eastern District of Tennessee, attorney Gwendolyn Kerney, attacked the integrity and ethics of various persons associated with Upright Law, including the firm's managing partner.  Kerney used these attacks to prevent Upright Law from practicing in the Eastern District of Tennessee.  She also used the attacks to obtain a $200,000 payment for herself.

## COUNT I

## LIBEL

20.     The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

21.     On August 16, 2021 -- after four years of work on the probate case -- Schuchardt terminated his representation of Dell'Aquila.

22.     Schuchardt terminated the representation because Dell'Aquila had failed to pay Schuchardt for his legal work.

23.     Dell'Aquila was refusing to settle litigation in the probate estate, involving an asset worth approximately $400,000.[4]  Dell'Aquila wanted Schuchardt to continue litigating the case on credit.

24.     On August 31, 2021, Schuchardt sued Dell'Aquila for breach of fiduciary duty, fraud, breach of contract, and quantum meruit in connection with the probate case.[5]

25.     Dell'Aquila retaliated by slandering Schuchardt's reputation in the media.

26.     Dell'Aquila began to publicly claim that Schuchardt had "damaged" the NRA case due to his suspension in the Eastern District of Tennessee.

27.     However, Schuchardt had no control over the license litigation.  He was denied a hearing in such case, and had no opportunity to present evidence to defend his license.  The case was political and involved attacks on several lawyers.

---

[4] As of the date of this complaint, Dell'Aquila still has made no distributions from the probate case -- after five years.

[5] The collection case is filed in the Circuit Court for Knox County, Tennessee under the caption, *Schuchardt v. Dell'Aquila*, Case No. 1-214-21.

28. Dell'Aquila falsely claimed that Schuchardt's association with the NRA case was "preventing" Dell'Aquila from finding new counsel for the NRA case. This statement was intentionally and materially false.

29. Dell'Aquila could not find new counsel for the NRA case because Dell'Aquila *refused to pay a retainer* to hire a new attorney.

30. Dell'Aquila wanted new counsel to handle the case on a contingent fee. That way, Dell'Aquila paid nothing out of pocket. Mr. Dell'Aquila's wife, Marita Dell'Aquila, insisted upon this.

31. During the summer of 2022, Dell'Aquila began to falsely tell journalists that *Schuchardt* was the "cause" for the Dell'Aquila's delay in moving the NRA case forward. At that point, Dell'Aquila had not retained new counsel in the case for nearly ten months.

32. In late July 2022, Dell'Aquila began to communicate with Defendant Roy Strom.

33. Strom is a journalist working with the Bloomberg Law division of Defendant Bloomberg, L.P. ("Bloomberg").

34. During these conversations, Dell'Aquila told Strom that *Schuchardt* was the cause for the delays in the NRA case.

35. On August 10, 2022, Defendant Strom published an article on the Bloomberg Law website entitled, "How Suspended Lawyer Derailed a $1 Billion Claim Against the NRA." A copy of the article is attached as Exhibit A.

36. The article's title -- and its content -- created the false and misleading impression that Schuchardt was responsible for "a $1 billion loss," in connection with the NRA case. In reality, there was no loss whatsoever.

37. The article also created the false impression that Schuchardt "materially delayed" or "derailed" the NRA case. The article quotes Dell'Aquila as making the following comments:

The lead plaintiff, Nashville gun rights activist David Dell'Aquila, blames Schuchardt for dooming their chances in court, and, more importantly, Dell'Aquila's bid to reform the organization. . . .

"This was a great case," Dell'Aquila said in an interview, "until Elliott put his greed ahead of everybody."

38.     The above comments by Dell'Aquila are libel and portray Schuchardt in a false light.

39.     Defendants Strom and Bloomberg fail to mention that <u>Dell'Aquila took no action</u> to retain new counsel on the NRA case for nearly a year -- from September 3, 2021 until August 16, 2022. Schuchardt had nothing to do with this year-long delay. The delay was caused because Dell'Aquila did not want to pay a retainer to new counsel, and wanted the case handled entirely on a contingent fee.

40.     Defendants Strom and Bloomberg fail to mention that <u>Schuchardt *withdrew* from the NRA case on May 13, 2022</u>. In their article, Defendants fail to mention that Dell'Aquila took no action to retain new counsel for an *additional three months* -- from May 13, 2022 until August 16, 2022. During this three month period, <u>Schuchardt was not involved in the case</u>, and had no ability to mitigate Dell'Aquila's delays.

41.     Defendants Strom and Bloomberg fail to mention in their article that <u>Dell'Aquila intentionally publicized the Court's *sealed* suspension order</u> by filing the order on the NRA docket on July 25, 2022.

42.     Defendants also fail to mention that Schuchardt had *<u>no legal obligation</u>* to find new counsel for Dell'Aquila. Instead, they include language in the article suggesting the exact opposite.

43.     The above information was <u>fully available on the court's docket sheet</u> when Defendants published their intentionally-false article regarding Plaintiff Schuchardt. Yet

Defendants intentionally misrepresented the facts, in order to profit at the expense of Schuchardt's reputation.

44.     The facts speak for themselves.

45.     Schuchardt became unable to represent Dell'Aquila in the NRA case on September 3, 2021, when the Middle District of Tennessee entered its reciprocity order.

46.     When that order was entered -- on September 3, 2021 -- the NRA case was *administratively closed*, because the NRA had filed for bankruptcy earlier in 2021.

47.     However, <u>Strom does not mention the administrative closing of the case in his article at all</u>.  He leads the reader to believe that Schuchardt remained in the case for seven months after the suspension.  However, the NRA case was administratively closed for those months, with no activity in the case.

48.     Schuchardt moved to withdraw from the NRA case immediately after the NRA reopened the case, on April 11, 2022.  On April 20, 2022, Schuchardt filed a motion for leave to withdraw from the NRA case.

49.     The court granted the motion on May 13, 2022.  At that point, Schuchardt had no further dealings with the case.

50.     Dell'Aquila did not retain counsel for an additional three months, after May 13, 2022.

51.     However, Defendants' article falsely implies that Schuchardt was "responsible" for delays in the case through the summer of 2022 -- even though Schuchardt was not counsel of record in the case and had no ability to affect Dell'Aquila's actions.

52.     The docket sheet is clear on this.

53.     On May 3, 2022, the Court gave Dell'Aquila until May 17, 2022, to file a response to the motion to dismiss.  *<u>Dell'Aquila did not so</u>*.

54. On May 13, 2022, the Court gave Dell'Aquila an additional thirty days to retain new counsel. *Dell'Aquila did not do so*.

55. On July 5, 2022, the Court issued an order directing Dell'Aquila to file a response to the motion to dismiss no later than July 19, 2022. *Dell'Aquila did not do so*.

56. Dell'Aquila did not retain new counsel in the case until August 16, 2022 -- over three months after Schuchardt had withdrawn from the case.

57. However, Dell'Aquila continued to publicly slander Schuchardt's reputation by blaming his own delays on Schuchardt.

58. That slander was repeated by Defendants Strom and Bloomberg in their article about the NRA case.

59. In summary, Strom's article is materially and intentionally false in the following particulars:

    a. The article falsely states that Mr. Schuchardt "derailed" the NRA case. The case was not derailed, and it never was. Dell'Aquila could have easily retained new counsel at any time from September 3, 2021 until August 17, 2022. He did not do so, because his wife, Marita Dell'Aquila, refused to let him pay attorneys fees in connection with the NRA case.

    b. The article creates the false and misleading appearance that Schuchardt created a "$1 billion loss" in connection with the NRA case. In reality, there was no loss.

    c. The article falsely implies that Schuchardt had an "obligation" to find new counsel for Dell'Aquila in the NRA case. Schuchardt had no obligation to find new counsel for Dell'Aquila. Dell'Aquila was paying Schuchardt an hourly rate, and was in breach of such agreement.

    d. The article falsely implies that Schuchardt had an obligation to enter into an agreement with attorney Peter Skinner to provide co-counsel in the NRA case. Schuchardt had no obligation to enter into, or to continue an agreement, with Skinner. Dell'Aquila was paying Schuchardt an hourly rate, and was in breach of such agreement.

e.     The article falsely portrays attorney Schuchardt as having interfered with a potential deal with Skinner due to "greed." This was not true. Schuchardt has spent years doing *pro bono* work in the courts.

f.     The article falsely states that Schuchardt demanded a 9% referral fee in the NRA case. That statement was not true.

g.     The article falsely states that a bankruptcy judge questioned Schuchardt's fees. No bankruptcy judge has ever questioned Schuchardt's fees. The fees at issue were those charged by Upright Law.

60.    Defendants' conduct was motivated by malice, and done in order to earn profits at the expense of Schuchardt's reputation.

61.    Schuchardt has incurred damages as a result of Defendants' materially false statements. Such damages include, without limitation, the following:

a.     Damage to Schuchardt's legal practice of nearly thirty years. Loss of thousands of dollars of income.

b.     Damage to Schuchardt's reputation and goodwill in the community.

c.     Loss of lifelong relationships and friendships.

d.     Damage to Schuchardt's license to practice law.

WHEREFORE, Schuchardt respectfully requests that this Honorable Court enter an order (a) awarding monetary damages to Schuchardt for an amount greater than $75,000; (b) awarding punitive damages against Defendants for an amount greater than $4 million; and (c) directing Defendants to remove the August 10, 2022 article from the internet.

## COUNT II

## FALSE LIGHT

62.     The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

63.     On August 10, 2022, Defendant Strom published an article on the Bloomberg Law website entitled, "How Suspended Lawyer Derailed a $1 Billion Claim Against the NRA."

64.     Strom also publicized the article through Twitter and various other internet websites.

65.     The article's title -- and its content -- creates the false and misleading impression that Schuchardt was responsible for "a $1 billion loss," in connection with the NRA case.  In reality, there was no loss whatsoever.

66.     The article also creates the false impression that Schuchardt "materially delayed" or "derailed" the NRA case.  This assertion is also not true, in light of the facts.

67.     According to the docket sheet for the NRA case -- which was available to Defendant Strom -- _Dell'Aquila himself was responsible for months of delay in the NRA case, long after Schuchardt had withdrawn from the case_.

68.     In summary, Strom's article portrays attorney Schuchardt in a false light in the following particulars:

    a.     The article falsely states that Mr. Schuchardt "derailed" the NRA case.  The case was not derailed, and it never was.  Dell'Aquila could have easily retained new counsel at any time from September 3, 2021 until August 17, 2022. He did not do so, because his wife, Marita Dell'Aquila, refused to let him pay attorneys fees in connection with the NRA case.

    b.     The article creates the false and misleading appearance that Schuchardt created a "$1 billion loss" in connection with the NRA case.  In reality, there was no loss.

c.     The article falsely implies that Schuchardt had an "obligation" to find new counsel for Dell'Aquila in the NRA case. Schuchardt had no obligation to find new counsel for Dell'Aquila. Dell'Aquila was paying Schuchardt an hourly rate, and was in breach of such agreement.

d.     The article falsely implies that Schuchardt had an obligation to enter into an agreement with attorney Peter Skinner to provide co-counsel in the NRA case. Schuchardt had no obligation to enter into, or to continue an agreement, with Skinner. Dell'Aquila was paying Schuchardt an hourly rate, and was in breach of such agreement.

e.     The article falsely portrays attorney Schuchardt as having interfered with a potential deal with Skinner due to "greed." This was not true. Schuchardt has spent years doing *pro bono* work in the courts.

f.     The article falsely states that Schuchardt demanded a 9% referral fee in the NRA case. That statement was not true.

g.     The article falsely states that a bankruptcy judge questioned Schuchardt's fees. No bankruptcy judge has ever questioned Schuchardt's fees. The fees at issue were those charged by Upright Law.

69.     Defendants' conduct was motivated by malice, and done in order to earn profits at the expense of Schuchardt's reputation.

70.     Schuchardt has incurred damages as a result of Defendants' materially false statements. Such damages include, without limitation, the following:

a.     Damage to Schuchardt's legal practice of nearly thirty years. Loss of thousands of dollars of income.

b.     Damage to Schuchardt's reputation and goodwill in the community.

c.     Loss of lifelong relationships and friendships.

d.     Damage to Schuchardt's license to practice law.

WHEREFORE, Schuchardt respectfully requests that this Honorable Court enter an order (a) awarding monetary damages to Schuchardt for an amount greater than $75,000; (b) awarding punitive damages against Defendants for an amount greater than $4 million; and (c) directing Defendants to remove the August 10, 2022 article from the internet.

## COUNT III

## INTRUSION

71.    The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

72.    On August 10, 2022, Defendant Strom published an article on the Bloomberg Law website entitled, "How Suspended Lawyer Derailed a $1 Billion Claim Against the NRA."

73.    Strom also publicized the article through Twitter and various other internet websites.

74.    The article publicizes information about Schuchardt that a reasonable person would consider confidential and improper for publicity.

75.    Defendants publicized such information in order to profit at the expense of Schuchardt's reputation and good will in the community.

76.    Specifically, the article publicizes the following information that a reasonable person would consider confidential:

      a.    The article publicizes a sealed order of this Court, dated September 3, 2021.  Such order has never been unsealed by the Court and is confidential.

      b.    The article publicizes the contents of private e-mails between attorney Schuchardt and attorney Peter Skinner.  Such e-mails are confidential. Neither Schuchardt nor Skinner authorized such e-mails to be published.

      c.    The article publicizes information about Schuchardt's financial status.  Such information is confidential.  Schuchardt did not authorize such information to be published to the general public.

77.    Defendants' conduct was motivated by malice, and done in order to earn profits at the expense of Schuchardt's reputation and good will in the community.

78.    Schuchardt has incurred damages as a result of Defendants' conduct.  Such damages include, without limitation, the following:

a. Damage to Schuchardt's legal practice of nearly thirty years. Loss of thousands of dollars of income.

b. Damage to Schuchardt's reputation and goodwill in the community.

c. Loss of lifelong relationships and friendships.

d. Damage to Schuchardt's license to practice law.

WHEREFORE, Schuchardt respectfully requests that this Honorable Court enter an order (a) awarding monetary damages to Schuchardt for an amount greater than $75,000; (b) awarding punitive damages against Defendants for an amount greater than $4 million; and (c) directing Defendants to remove the August 10, 2022 article from the internet.

## COUNT IV

## LIBEL

79. The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

80. Defendants Strom and Bloomberg repeated their libel of attorney Schuchardt in a second article, published on August 17, 2022. A copy of the article is attached as Exhibit B.

81. In that article, entitled "NRA Donors Revive Near-Dead Lawsuit by Finding New Lawyers," Defendants stated as follows:

> [The NRA case] was derailed and sat dormant for months after the lead lawyer, Knoxville-based Elliott Schuchardt, was suspended from practicing in federal court in Tennessee, as chronicled in a Bloomberg Law story last week.
>
> The litigation froze last summer when Schuchardt tried to enlist potential co-counsel at the powerful firm Boies Schiller Flexner, but the two couldn't agree on Schuchardt's role or his fees. Schuchardt didn't formally withdraw his appearance until this spring.

82. The above statements are materially false.

83.     As explained by the above summary of the docket sheet for the NRA case, the NRA case was never "derailed."  Furthermore, attorney Schuchardt had nothing to do with the delays in the case.

84.     Dell'Aquila himself delayed the case by refusing to pay a retainer to new counsel during the period from September 3, 2021 until August 16, 2022.

85.     As noted above, the case was administratively closed due to the NRA's bankruptcy case from September 3, 2021 until April 11, 2022.  However, neither Strom nor Bloomberg mention that the case was closed.

86.     Furthermore, Schuchardt was not involved in the NRA case after May 13, 2022. Yet Strom's article leads the reader to believe that Schuchardt caused the delays in the case through the summer of 2022, until new counsel finally entered an appearance on August 16, 2022.

87.     Schuchardt had nothing to do with that three month delay, and had no ability to mitigate Dell'Aquila's delays in the case.

88.     All of this information was publically available to Defendants on the docket sheet for the NRA case.

89.     Defendants' conduct was motivated by malice, and done in order to earn profits at the expense of Schuchardt's reputation and good will in the community.

90.     Schuchardt has incurred damages as a result of Defendants' conduct.  Such damages include, without limitation, the following:

     a.    Damage to Schuchardt's legal practice of nearly thirty years.  Loss of thousands of dollars of income.

     b.    Damage to Schuchardt's reputation and goodwill in the community.

     c.    Loss of lifelong relationships and friendships.

d.   Damage to Schuchardt's license to practice law.

WHEREFORE, Schuchardt respectfully requests that this Honorable Court enter an order (a) awarding monetary damages to Schuchardt for an amount greater than $75,000; (b) awarding punitive damages against Defendants for an amount greater than $4 million; and (c) directing Defendants to remove the August 17, 2022 article from the internet.

## COUNT V

## FALSE LIGHT

91.   The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

92.   Defendants Strom and Bloomberg repeated their libel of attorney Schuchardt in a second article, published on August 17, 2022.

93.   In that article, entitled "NRA Donors Revive Near-Dead Lawsuit by Finding New Lawyers," Defendants stated as follows:

> [The NRA case] was derailed and sat dormant for months after the lead lawyer, Knoxville-based Elliott Schuchardt, was suspended from practicing in federal court in Tennessee, as chronicled in a Bloomberg Law story last week.
>
> The litigation froze last summer when Schuchardt tried to enlist potential co-counsel at the powerful firm Boies Schiller Flexner, but the two couldn't agree on Schuchardt's role or his fees. Schuchardt didn't formally withdraw his appearance until this spring.

94.   The above statement creates the intentionally false impression that Schuchardt was responsible for months of delay in the NRA case.

95.   As explained by the above summary of the docket sheet for the NRA case, the NRA case was never derailed.  Furthermore, attorney Schuchardt had nothing to do with the delays in the case.

96.    Dell'Aquila himself delayed the case by refusing to pay a retainer to new counsel during the period from September 3, 2021 until August 16, 2022.

97.    As noted above, the case was administratively closed due to the NRA's bankruptcy case from September 3, 2021 until April 11, 2022. However, neither Strom nor Bloomberg mention that the case was closed.

98.    Furthermore, Schuchardt was not involved in the NRA case after May 13, 2022. Yet Strom's article leads the public to believe that Schuchardt caused the delays in the case through the summer of 2022, until new counsel finally entered an appearance on August 16, 2022.

99.    Schuchardt had nothing to do with that three month delay, and had no ability to mitigate Dell'Aquila's delays in the case.

100.    All of this information was publically available to Defendants on the docket sheet for the NRA case.

101.    Defendants' conduct was motivated by malice, and done in order to earn profits at the expense of Schuchardt's reputation and good will in the community.

102.    Schuchardt has incurred damages as a result of Defendants' conduct. Such damages include, without limitation, the following:

    a.    Damage to Schuchardt's legal practice of nearly thirty years. Loss of thousands of dollars of income.

    b.    Damage to Schuchardt's reputation and goodwill in the community.

    c.    Loss of lifelong relationships and friendships.

    d.    Damage to Schuchardt's license to practice law.

WHEREFORE, Schuchardt respectfully requests that this Honorable Court enter an order (a) awarding monetary damages to Schuchardt for an amount greater than $75,000; (b) awarding

punitive damages against Defendants for an amount greater than $4 million; and (c) directing Defendants to remove the August 17, 2022 article from the internet.

Respectfully submitted,

By

Elliott J. Schuchardt
BPR No. 027016

8033 Ellisville Lane
Knoxville, TN 37909
Phone: (865) 304-4374
E-mail: elliott016@gmail.com

Free Newsletter Sign Up

Business & Practice

# How Suspended Lawyer Derailed NRA Donors' $1 Billion Claim (1)

By Roy Strom

Deep Dive
Aug. 10, 2022, 10:28 AM; Updated: Aug. 10, 2022, 1:12 PM

- A 'great case' until greed got in the way, plaintiff asserts

- Boies Schiller partner backed out over disputes with local counsel

For a Tennessee lawyer used to shepherding personal bankruptcies for $1,250 a pop, the case that landed in Elliott Schuchardt's lap offered the potential reward of a lifetime: A legal fee worth millions and a class-action victory against one of the most powerful interest groups in US history.

Schuchardt in 2019 helped build a case alleging that the National Rifle Association had bilked donors to pay for the lavish lifestyles of its leaders. The lawsuit sought the return of possibly hundreds of millions in contributions to once-loyal NRA members. By one estimate, the case could have cost the NRA $1 billion.

But behind the scenes, it was on a path to failure.

**Sign up for The Brief, a daily afternoon newsletter showcasing Bloomberg Law's top stories.**

Before he formally joined the case, Schuchardt's license to practice in federal court had been suspended amid a dispute with a bankruptcy judge in Knoxville who questioned his fees, professionalism and competency. Then his bid to enlist some heavyweight help against the NRA— a partner from New York's Boies Schiller Flexner— crashed when they couldn't resolve Schuchardt's role or how much he should be paid.

Now, no lawyer represents the NRA donors, and a judge has set an Aug. 17 deadline, warning that he'll toss the proposed class action without a new lawyer to get it back on track.

Why no firm has signed on to a case that won an early ruling—and could get a boost from a parallel investigation by New York Attorney General Letitia James—remains something of a mystery.

**EXHIBIT**

*A*

The lead plaintiff, Nashville gun rights activist David Dell'Aquila, blames Schuchardt for dooming their chances in court, and, more importantly, Dell'Aquila's bid to reform the organization. Schuchardt waited more than a year after his suspension to withdraw from the case and has since tussled with Dell'Aquila over who's responsible for finding new representation.

"This was a great case," Dell'Aquila said in an interview, "until Elliott put his greed ahead of everybody."

In two short phone conversations with Bloomberg Law, Schuchardt was reluctant to discuss the case, but said Dell'Aquila was trying to shift blame for his own failure to find a lawyer. He declined to discuss the fee dispute but threatened to sue if his former client slandered him.

Schuchardt, 55, also said he has retired from practicing law. In one of the calls, he defended his record.

"This was excellent legal work that I was performing for all of these clients," he said.

**An Unlikely Advocate**

The story of how a massive lawsuit against America's most prominent gun rights organization floundered in the hands of a suspended lawyer begins with the death of Dell'Aquila's father in 2017.

A former lawyer in Pittsburgh, the elder Dell'Aquila left an estate valued around $500,000. His son, who says he's a self-made millionaire and had promised as much as $10 million to the NRA, was tasked with settling his father's estate with his siblings.

After asking around for attorney recommendations, including a chat with an NRA lawyer, Dell'Aquila was referred to Schuchardt.

A 1993 Columbia University School of Law graduate, Schuchardt worked as an associate at white-shoe firms including Paul Weiss Rifkind Wharton & Garrison and Dechert before hanging his shingle in Knoxville in 2003.

Among the career accomplishments he cites are lawsuits he filed against the Obama and Trump administrations, alleging the National Security Agency illegally intercepted Americans' emails, claims based on documents obtained by whistleblower Edward Snowden. While Schuchardt won an early victory granting him the standing to sue, a federal appeals court ultimately tossed the case, finding his evidence too flimsy to be admissible in court.

That case exemplifies Schuchardt's legal career. He seems to relish playing the David to a Goliath, even if his slingshot occasionally misfires.

By 2019, Schuchardt had signed on as Dell'Aquila's probate lawyer. His client's attention soon turned toward a case he was building against an organization he loves.

Dell'Aquila had been a longtime NRA member, and his largesse gave him access to its leaders, including private dinners with CEO Wayne LaPierre and others. But he had grown disillusioned.

Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 19 of 30 PageID #: 19



David Dell'Aquila, left, and his wife, Marita, with NRA leader Wayne LaPierre in 2016

Courtesy of David Dell'Aquila

Reports alleging financial malfeasance at the top matched his own concerns. Dell'Aquila said he couldn't get answers to his questions about how the NRA was spending gifts from six-figure donors.

He decided to halt his donations until the group removed the leadership he viewed as distracting from the goal of preserving and expanding Second Amendment rights.

"I'm not pro-Mr. LaPierre, and I'm not anti-Mr. LaPierre, I'm just simply being objective and trying to save a historic institution from itself," Dell'Aquila told the New York Times in a 2019 story about NRA donors lobbying for reform.

His decision to sue to the group, he reasoned, was about effecting change more than winning a payout. In August 2019, Dell'Aquila persuaded Schuchardt to help him draft the lawsuit; he filed it himself.

"I paid him $5,000 and he wrote it up," Dell'Aquila said in an interview. "Chances are, we weren't going to get standing. Nobody thought we would. But we did."

## A Bankruptcy Break

At the time, Schuchardt had been dealing with the fallout of a war he'd waged with a bankruptcy judge in Knoxville, with his ability to work in Tennessee federal courts dangling in the balance.

The judge, Suzanne Bauknight, had accused Schuchardt of overcharging clients, incompetence and of falsely accusing her of improper communications with a US trustee in one of his cases.

Schuchardt asserted he was being targeted because the judge and the local trustee—who serves as a sort of referee protecting bankrupt individuals' interests—had an axe to grind against his new employer, Upright Law. The firm, which has stirred controversy and scrutiny over its tactics, signs up clients through its website and a Chicago-based intake center then doles them out to local partners across the country.

Bauknight did not appreciate the accusation; she started disciplinary proceedings. In a January 2018 order, Bauknight had raised questions about Schuchardt's conduct and competency in 17 cases, saying he exhibited "either a lack of basic bankruptcy knowledge" or "a refusal to adequately research issues."

Schuchardt agreed to a six-month moratorium on handling bankruptcy petitions in the Eastern District of Tennessee, but their detente didn't last. That June, Bauknight accused him of continuing to represent clients—an allegation he denied— and sought steeper sanctions.

Schuchardt fought back, and the case sat unresolved for a year. Then, on Dec. 10, 2019, the district's chief judge, Pamela Reeves, suspended Schuchardt for two years, citing a lack of ethics and professionalism. "His conduct has fallen below that required of members of the bar of the Eastern District of Tennessee," she wrote.

Case 3:22-cv-01017    Document 1    Filed 12/14/22    Page 21 of 30 PageID #: 21

The penalty also automatically barred Schuchardt from practicing in the Middle District of Tennessee, which includes Nashville, and required him to alert that court of his status. He didn't.

Instead, nine days after being suspended, Schuchardt formally entered his appearance to represent Dell'Aquila and other NRA members in the proposed class action.

Schuchardt told Bloomberg Law he believed he was compliant with all the rules of the Middle District when he entered his appearance there. He acknowledged he had been "slow in reporting the suspension" but declined to elaborate.

A Texas Two-Step

Unaware of the suspension, US District Judge William Campbell handed the plaintiffs an early decision they saw as a victory. In September 2020, he dismissed the racketeering claim against the NRA and a separate one against LaPierre—but allowed the fraud charge against the NRA to move forward.

The class-action theory is that the NRA solicited donations promising they'd be spent advocating the Second Amendment, not funding LaPierre's trips. If the plaintiffs successfully argue that all donations to the NRA were collected fraudulently, they could seek to recoup contributions made from late 2015 through early 2019— a sum in excess of $330 million, records show. If the RICO allegation had held, or was reinstated, the damages would triple.

Michael Kanovitz, a Chicago-based lawyer at Loevy & Loevy who's handled large class-action claims and reviewed the case for Bloomberg Law, said a billion-dollar award was "probably pie-in-the-sky money" but that the claim otherwise has merits. "It's absolutely a viable lawsuit," he said.

A key issue, he said, would be how broad the judge views the alleged fraud. Would donors have given the NRA nothing if they knew the wasteful spending was occurring? Or do they deserve lesser compensation, closer to the amount wasted by the executives?

The NRA contends the lawsuit is baseless. "The majority of Mr. Dell'Aquila's claims have been rejected by the courts—evidence this is a frivolous pursuit," NRA lawyer William A. Brewer III said in a statement. "The NRA's commitment to good governance is clear."

But Dell'Aquila and Schuchardt's case got a potential boost from an unlikely source. In August 2020, the New York Attorney General had announced her own, similar fraud case against the NRA, a nonprofit incorporated in the Empire State. She sought to dissolve the group.

The gun-rights group assailed the New York Democrat's suit as politically motivated. But by January 2021 the NRA had filed for bankruptcy protection in Texas, saying it would reincorporate there—an effort James panned as a tactic to evade her investigation.

That meant Dell'Aquila, because of his lawsuit, became a creditor in the bankruptcy proceeding there, and that the class-action would be stayed in Tennessee. It also meant he needed lawyers in Texas.

Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 22 of 30 PageID #: 22

Dell'Aquila enlisted Dallas-based attorney Walter Herring to represent him personally and find Texas lawyers to jump into the case. But the political calculations were tricky.

"The class-action lawyers I talked to, some of them hate the NRA and were excited just to file a lawsuit against them," Herring said. "Another group I talked to said, 'These people you're talking to hate the NRA. They want to take on this case because they want to destroy the NRA.' So it was curious bedfellows in that regard."

## A Deal Falls Apart

In the end, the bankruptcy case was short-lived. A judge tossed it in May 2021, finding the NRA was improperly trying to use it "to address a regulatory enforcement problem."

So the class-action, with Schuchardt at the helm, was back on the front-burner in Tennessee federal court. But he needed help; the NRA already had five lawyers enter appearances on its behalf, including Brewer, one of the alleged "insiders" cited in Dell'Aquila's complaint.

Schuchardt turned to one of the nation's most prominent firms: Boies Schiller. Founded by trial lawyer David Boies, its litigators had successfully waged class-action battles against powerful adversaries. Just months earlier, it had negotiated a $2.7 billion antitrust settlement with Blue Cross Blue Shield that was poised to net lawyers more than $600 million.

By late last summer, Schuchardt had a signed agreement from Peter Skinner, a former Manhattan federal prosecutor and the head of Boies Schiller's government investigations and white-collar practice group. At the time, Skinner had just finished representing Nike in the federal extortion case against celebrity lawyer Michael Avenatti.

Then Schuchardt told Skinner about his suspension. The Boies lawyer was floored; in emails Dell'Aquila shared with by Bloomberg Law, Skinner insisted Schuchardt had to fully back out of the case.

Despite his suspension, Schuchardt played hardball, telling his would-be co-counsel he deserved a flat percentage of any award, and brushing aside any suggestion he was just in it for the money.

"My track record speaks for itself," Schuchardt wrote in one email. "As for finances, I am richer than you think."

Skinner repeatedly told the Knoxville lawyer he was entitled to some compensation for his work to that point but that he couldn't expect a percentage fee of any award. Skinner said judges decide how lawyers get paid in class-action cases and that's based on the amount of work each lawyer performs.

For weeks, the two lawyers argued how to move forward, according to the emails. Skinner's final offer: "You play no role going forward and are paid on a proportional basis for the work you did before you withdrew."

Schuchardt again demanded a 9% fee; Skinner terminated the agreement three days later. "As the only attorney of record in the case, I am sure you will do whatever is necessary to zealously represent your clients," he wrote.

After reading Skinner's termination letter, Dell'Aquila sent Schuchardt an email demanding he withdraw from the case or else be fired. "Once again, this is about reforming the NRA and not about you and your desire to obtain a multi-million-dollar payout!" he wrote.

The Dallas bankruptcy attorney, Herring, also intervened and urged Schuchardt to reconcile with the New York lawyers. It didn't happen.

"He's a solo practitioner trying to make a living," Herring said in an interview. "I do think the money became the issue there."

Schuchardt finally disclosed his suspension to court officials in Nashville, and, in September, was informed he'd been ineligible to practice there before he even filed an appearance in the NRA case. He halted work on the class-action, but never formally withdrew his appearance. The case sat dormant for months.

In April, a lawyer representing Dell'Aquila in a separate matter wrote Schuchardt and told him it was his responsibility to find alternate counsel in the class action or be held liable for any losses.

That same month, the NRA lawyer, Brewer, called Schuchardt to discuss the case and learned he no longer represented Dell'Aquila and the others.

Brewer then petitioned Judge Campbell to dismiss the suit for lack of prosecution. That motion is pending.

## A Relationship Ends

A judge in March rejected the New York attorney general's effort to dissolve the NRA. But two months later, she won new momentum on the fraud claims, when a judge rejected the NRA's argument that James lacked the authority to bring her suit.

Meanwhile, Dell'Aquila has struggled to persuade anyone to take his case; he said he's talked to at least 50 lawyers. But the firms he's cold-called often don't return his calls, he said, and even his conversations with prominent figures in Second Amendment circles haven't been fruitful.

He wonders if the case is too political or if public interest has waned around the NRA's spending.

"Elliott worked on [enlisting] Peter for three months," he said. "It's not as easy as you think."

He's also battling Schuchardt on another front. His father's estate is not yet wound down, and his former lawyer is suing him for nearly $100,000 in unpaid legal fees in the probate case.

Dell'Aquila said Schuchardt needs to request his fees from the probate judge. He's also filed a complaint against Schuchardt with the Tennessee Board of Professional Responsibility.

Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 24 of 30 PageID #: 24

Skinner, who left Boies Schiller in May, declined to comment.

In one phone call with Bloomberg Law, Schuchardt said he remains committed to "clearing his name," insisting his law license was unfairly attacked over his affiliation with Upright Law. He said Dell'Aquila hadn't paid him hourly fees for the NRA work, noting "I have not yet sued him" for that money. (Dell'Aquila denies he owes the lawyer anything for the case.)

Last month, the Knoxville lawyer asked an appeals court to rescind his suspension, arguing the bankruptcy judge was biased against him and that he was denied a hearing.

But it's not clear he wants to be a lawyer again. On his Wikipedia page, Schuchardt says he has retired from the practice of law, and is now writing a book.

He hopes to take on another giant. In a conversation with Bloomberg Law last week, he didn't want to discuss the book other than sharing its subject: "problems with the US currency."

Late Tuesday, less than a week after being asked to review the case for this article, Kanovitz, the Chicago lawyer, told Bloomberg Law he thought it was so promising, he had reached out to Dell'Aquila to discuss taking the case.

Both men said they hope to sign an agreement this week. The next step: find a Tennessee lawyer to join the case.

(Adds March ruling striking down effort to dissolve the NRA in first paragraph of last section. )

To contact the reporter on this story: Roy Strom in Chicago at rstrom@bloomberglaw.com

To contact the editors responsible for this story: John Martin at jmartin1@bloombergindustry.com and Chris Opfer at copfer@bloombergindustry.com.

## Related Articles

| | |
|---|---|
| NRA Donors Revive Near-Dead Lawsuit by Finding New Lawyers (1) | Aug. 17, 2022, 11:20 AM |
| NRA Must Face New York Fraud Lawsuit Seeking to Dissolve It (1) | Jan. 21, 2021, 3:15 PM |
| NRA Says It's 'Not Afraid' of N.Y. Lawsuit, Will Continue Fight | Jan. 20, 2021, 5:29 PM |
| NRA's LaPierre Accused of Using Bankruptcy to Duck Probe (1) | April 6, 2021, 10:12 AM |
| NSA Surveillance Program Challenge Dismissed Again (2) | Feb. 5, 2019, 3:31 PM |

Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 25 of 30 PageID #: 25

## Law Firms

Paul Weiss
Boies Schiller Flexner

## Topics

corporate officers
class actions
attorney suspension
admissibility
probate
standing
U.S. trustees
joinder
compensation of bankruptcy attorney
right to bear arms
national security
computer surveillance
email

© 2022 Bloomberg Industry Group, Inc.   All Rights Reserved

Free Newsletter Sign Up

Business & Practice

# NRA Donors Revive Near-Dead Lawsuit by Finding New Lawyers (1)

By Roy Strom

Aug. 17, 2022, 11:20 AM; Updated: Aug. 17, 2022, 5:51 PM

- NRA donors seeking return of hundreds of millions

- Faced a deadline of Wednesday to find new lawyers

A once-floundering lawsuit against the National Rifle Association of America that seeks the return of potentially hundreds of millions in donations is back on track after the plaintiffs found new lawyers just before a crucial deadline.

Chicago-based Loevy & Loevy and Southeast law firm Stites & Harbison are now representing the group of disillusioned donors seeking to certify a class-action against one of the most powerful interest groups in US history.

The donors, led by Nashville gun-rights activist David Dell'Aquila, argue the NRA fraudulently solicited donations to protect the Second Amendment but instead used the money to fund its executives' lavish lifestyles. Their allegations mirror ones leveled in a separate lawsuit by New York Attorney General Letitia James.

But their case was derailed and sat dormant for months after the lead lawyer, Knoxville-based Elliott Schuchardt, was suspended from practicing in federal court in Tennessee, as chronicled in a Bloomberg Law story last week.

The litigation froze last summer when Schuchardt tried to enlist potential co-counsel at the powerful firm Boies Schiller Flexner, but the two couldn't agree on Schuchardt's role or his fees. Schuchardt didn't formally withdraw his appearance until this spring.

After the NRA moved to dismiss the case for lack of prosecution, the Nashville-based judge had set a Wednesday deadline for the plaintiffs to find new lawyers.



Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 27 of 30 PageID #: 27

Jonathan Loevy and Michael Kanovitz, two partners at Chicago-based Loevy & Loevy, are now representing the donors alongside Stites & Harbison member John Wingo, who's based in Nashville, and Louisville-based members T. Morgan Ward Jr. and Chadwick McTighe.

Loevy & Loevy handles complex litigation and commercial matters but is best known in Chicago for representing wrongfully convicted defendants seeking compensation from the state. The firm found out about the case when Bloomberg Law asked Kanovitz this month to review court documents and provide an independent expert opinion. He told Bloomberg Law the case was "absolutely a viable lawsuit" and days later approached Dell'Aquila and offered to represent him.

"This suit offers a unique opportunity to demand transparency from the NRA and reform the organization," Kanovitz said in a statement. "We will conduct a fulsome investigation and follow the money. Our goal is to correct the misconduct that has been going on behind closed doors and obtain compensation for the people the NRA defrauded."

The NRA is represented in the case by William A. Brewer III. He said in a statement that the organization is "eager to move a case forward that it believes totally lacks merit."

"The NRA is confident in its commitment to good governance, as is evidenced by its defense of NYAG dissolution claims that are no more," Brewer said, referring to a failed effort to dissolve the organization by New York's James.

**Lavish Spending Alleged**

The case seeks to certify a class of NRA donors who could seek returns from late 2015 through early 2019. The NRA took in more than $330 million in donations from 2016 through 2018, according to tax documents.

The case had won an early ruling granting the plaintiffs standing to bring the lawsuit and allowing a fraud claim against the NRA to continue.

Dell'Aquila, the lead plaintiff who had once promised a $10 million donation to the NRA through his estate, has said the case is a vehicle to force management changes at the NRA. He said he has stopped donating to the group and has sought the ouster of NRA Chief Executive Officer Wayne LaPierre.

"I feel like we won the $1.5 billion lottery," Dell'Aquila said of finding new lawyers. "We were literally down to the wire, with only hours left to obtain new counsel."

The NRA's spending on LaPierre's personal trips and other expenses is the focus of a lawsuit brought by the New York Attorney General' against the gun-rights group. The suit briefly forced the NRA to seek bankruptcy protection.

Case 3:22-cv-01017   Document 1   Filed 12/14/22   Page 28 of 30 PageID #: 28

LaPierre told a bankruptcy judge last year that he failed to disclose yacht trips and other expenses, including a hunting trip in Botswana, in what he acknowledged were violations of the NRA's policies. The bankruptcy was later dismissed, with a federal judge ruling it was used to defend against a regulatory challenge rather than financial difficulties.

James alleges the organization wrongfully spent at least $64 million on personal expenses for executives. Her lawsuit failed in its effort to dissolve the New York-based non-profit, but she won a key ruling in May to continue.

(Adds comment from NRA lawyer starting in 10th paragraph.)

To contact the reporter on this story: Roy Strom in Chicago at rstrom@bloomberglaw.com

To contact the editors responsible for this story: Chris Opfer at copfer@bloomberglaw.com; John Martin at jmartin1@bloombergindustry.com

## Related Articles

How Suspended Lawyer Derailed NRA Donors' $1 Billion Claim (1)                      Aug. 10, 2022, 10:28 AM

NRA's LaPierre Accused of Using Bankruptcy to Duck Probe (1)   April 6, 2021, 10:12 AM

New York's Bid to End NRA Gets Skeptical Reaction From Judge (2)                      Dec. 10, 2021, 6:40 PM

## Law Firms

Stites & Harbison
Boies Schiller Flexner

## Topics

corporate officers
expert witnesses
frivolous litigation
class certification
attorney suspension
right to bear arms
standing
lead plaintiff
nonresident alien taxpayers
estates
dismissal of bankruptcy case

© 2022 Bloomberg Industry Group, Inc.  All Rights Reserved